```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

LEVY INDIANA SLAG COMPANY,    )
                              )
        Plaintiff,            )
                              )
     v.                       )    Case No. 2:05 CV 344
                              )
INTERNATIONAL UNION OF        )
OPERATING ENGINEERS, LOCAL    )
150, AFL-CIO,                 )
                              )
        Defendant             )
_____
EDW. C. LEVY COMPANY, INC.,   )
                              )
        Plaintiff,            )
                              )
     v.                       )    Case No. 2:05 CV 349
                              )
INTERNATIONAL UNION OF        )
OPERATING ENGINEERS, LOCAL    )
150, AFL-CIO,                 )
                              )
        Defendant             )

## OPINION and ORDER

This matter is before the court on the Motion to Compel Discovery filed by the defendant, International Union of Operating Engineers ("Local 150"), in these consolidated cases on March 30, 2006, and the Motion to Bar Claims and Evidence and Compel Responses to Second and Third Document Requests filed by Local 150 on May 15, 2006. For the reasons set forth below, the first motion to compel is **GRANTED IN PART** and **DENIED IN PART,** and the motion to bar claims/motion to compel is **TAKEN UNDER ADVISEMENT.**

## Background

This discovery dispute arises from a breach of contract case in which the defendant, Local 150, picketed Levy Indiana Slag Company ("LISCO") and the Edwin C. Levy Company ("ECL") shortly after Local 150 struck a sister company, The Levy Company. Although Local 150 represents the employees at all three companies, the employees of each company are part of a separate bargaining unit. (Def. Exh. 1) Furthermore, labor relations at each company are governed by separate collective bargaining agreements ("CBAs"). (Def. Exh. 1, 3)

On September 7, 2005, LISCO brought suit against Local 150 for breach of the "no strike" clause in its CBA. Two days later, ECL filed suit against Local 150 for breach of an identical clause in its own CBA.

On March 30, 2006, Local 150 filed motions to compel in these two cases, which subsequently were consolidated. The bulk of these motions sought a significant amount of information from LISCO and ECL on the grounds that it was relevant to Local 150's "single employer defense." LISCO and ECL responded that this defense does not exist, and even if it did, single employer status is not legally relevant because each company had a separate CBA with Local 150. Because this court has an obligation to determine the scope of relevant discovery under Federal Rule of Civil Procedure 26(b)(1), the parties were directed to brief the issue of the single employer defense by May 22, 2006. All parties having responded, the court now addresses Local 150's single

employer defense, as well as other issues raised in Local 150's motion to compel and subsequent "Motion to Bar Claims and Evidence and Compel Responses to Second and Third Document Requests."

Discussion

### A. Single Employer Defense

The critical question is this: does single employer status impact the interpretation of a "no strike" clause found in the CBAs of two companies targeted by a union's sympathy strike when each company involved has a separate CBA agreed to by a separate bargaining unit? Pursuant to Seventh Circuit precedent, the answer is "no."

Single employer status impacts collective bargaining under the National Labor Relations Act when the court must determine whether a non-signatory entity is bound by the provisions in another entity's CBA. *See, e.g.,* **Moriarty v. Svec**, 164 F.3d 323, 332 (7th Cir. 1999); **Stardyne, Inc. v. National Labor Relations Board**, 41 F.3d 141, 144 (3rd Cir. 1994); **International Brotherhood of Electrical Workers Local Union 159 v. Circuit Electric, LLC**, No. 05-C-613-S, 2006 WL 623702, at *4 (W.D. Wis. 2006). A requirement of single employer status is that the "two entities' employees constitute a single appropriate bargaining unit." **Stardyne**, 41 F.3d at 144 (*cited in* **Moriarty**, 41 F.3d at 333). By its very definition, single employer status cannot be applied when the employees of both entities are not a singular bargaining unit.

3

When "the Union represents two separate units, one of which [has] agreed on a contract with [an employer], and the other of which [is] still on strike," the unit with a contract "is bound to comply with the no-strike clause and to direct, encourage and order members of that unit also to comply." ***Sinclair Oil Corporation v. Oil, Chemical and Atomic Workers International Union***, 452 F.2d 49, 51 (7th Cir. 1971). Simply put, the bargained-for contract governs the rights and obligations of the parties, and single employer status is irrelevant. See ***W-1 Canteen Service, Inc. v. National Labor Relations Board***, 606 F.2d 738, 743-44 (7th Cir. 1979)(holding one bargaining unit of the union violated the no-strike clause of its CBA when its members refused to cross the picket line of another bargaining unit). See also ***Southwest Banana Distributors, Inc. and South Atlantic and Gulf Coast District, International Longshoremen's Association, AFL-CIO***, 145 NLRB 815, 819 (1964).

For example, the employees of Company A and Company B were members of separate bargaining units, each with their own respective CBAs, in ***Southwest Banana***, 145 NLRB at 817. When Company A's employees refused to work during a strike by Company B's employees, the union argued that Company A and B were a single employer. ***Southwest Banana***, 145 NLRB at 817. The NLRB concluded that single employer status was not relevant to the parties' rights and obligations in that case. Rather, "[t]he controlling factor here is that two employee units are involved, each covered by a separate and independent contract." ***Southwest Banana***, 145

4

NLRB at 819. Consequently, Company A was entitled to take action against its employees for breach of the CBA. *Southwest Banana*, 145 NLRB at 819 ("That an employer may lawfully take such action where a contract is so breached is too well settled to require citation of any authority.") *Southwest Banana*, 145 NLRB at 819.

Local 150's brief in support of the first motion to compel focuses on the elements of single employer status and the interpretation of no-strike clauses, but it does not provide any law in support of its position that single employer status is legally significant to this type of breach of contract case. Local 150 is not entitled to seek discovery directed to its single employer defense because single employer status is not relevant to the district court's resolution of this case. However, the ECL and LISCO cases are not consented to the magistrate judge. Therefore, the court expressly limits its decision to the question of relevance and does not state any opinion on whether Local 150 acted lawfully.

That single employer status is not relevant makes sense in light of the primary purpose of the collective bargaining process, which is to increase stability in industrial relations. See *Sinclair*, 452 F.2d at 52-53. If unions were able to make an end-run around CBA no-strike provisions by asserting a single employer defense, affiliated entities would not be able to rely confidently on their bargained-for rights.

For these reasons, the court finds that the portions of Local 150's first motion to compel that seek information related

to its "single employer defense" exceed the scope of permissible discovery.

### B. First Set of Interrogatories and Requests for Production

Every interrogatory and document request to which Local 150 seeks to compel an answer relates exclusively to the "single employer defense" determined to be irrelevant by this court, with the exception of Interrogatories 9-10. Accordingly, Local 150 is not entitled to discovery of the matters requested therein.

Interrogatory 9 requests the identity of each expert and lay witness who may be called at trial under Federal Rules of Evidence 701-703 and 705, the subject matter, opinions, and conclusions on which each witness is expected to testify, the bases for these opinions and conclusions, and the person's qualifications. LISCO and ECL indicate that they will provide this information pursuant to the court's scheduling order.

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert identity and testimony under Rules 702, 703, and 706. Under Rule 26(a)(2), a party shall identify the experts it may use at trial, but this disclosure "shall be made at the times and in the sequence directed by the court." On June 15, 2006, this court established an expert witness deadline of July 27, 2006. LISCO and ECL are under no obligation to provide the requested information, insofar as it relates to Rule 702, 703, and 706 experts, prior to this deadline. While Local 150 relies on dicta in *Jayne H. Lee, Inc. v. Flagstaff Industries Corpora-*

*tion*, 173 F.R.D. 651, 652 (D. Md. 1997) to argue otherwise, *Flagstaff* is not controlling in this jurisdiction.

However, Interrogatory 9 also seeks disclosure of LISCO and ECL's fact witnesses under Federal Rule of Civil Procedure 701. Local 150 is entitled to the disclosure of these witnesses during the course of fact discovery. *See, e.g.,* ***Portis v. City of Chicago***, No. 02 C 3139, 2005 WL 991995, at *7 (N.D. Ill. April 15, 2005). Therefore, LISCO and ECL shall supplement their response to Interrogatory 9 consistent with this Opinion.

Interrogatory 10 requests that LISCO and ECL identify "each and every instance from 1970 through the present in which LISCO/ECL has disciplined . . . any employee for engaging in a sympathy strike or other sympathy activity" and asks the plaintiffs to identify the striking union, location and date of strike, employee disciplined, nature of discipline, and persons making the disciplinary decision. Local 150 seeks this information because past practice may be used to determine whether LISCO and ECL have waived their breach of contract claims. *See* ***W-1 Canteen***, 606 F.2d at 748. In responding to the first motion to compel, the plaintiffs object on the basis that a 36 year period is temporally overbroad.

A party "has the burden of establishing facts justifying its objection" unless the language of the request indicates that it clearly is unduly burdensome. ***Davis v. Precoat Metals***, No. 01 C 5698, 2002 WL 1759828, at *3 (N.D. Ill. July 29, 2002). A sympathy strike is not an every day occurrence. While LISCO and ECL

7

argue that it would be unduly burdensome to produce information on past discipline for sympathy strikes, the plaintiffs have not alleged that the information sought by Local 150 is voluminous or difficult to compile. Because the plaintiffs have provided no explanation for their objection to this specific interrogatory (the objection focuses on incorporation records and other company documents), the objection fails. The plaintiffs shall respond to Interrogatory 10.

Finally, the parties dispute how loosely associated subparts may constitute parts of a single interrogatory. Because Local 150 propounded Interrogatories 15-25 to gain information on its "single employer defense," the number of interrogatories before the court that seek relevant information is less than the 25 agreed to by the parties. In addition, LISCO and ECL already have answered Interrogatories 1-15, with the exceptions listed above. Therefore, the court need not reach this issue. However, the court notes that subparts are not logically or factually related when, as with Interrogatory 17, the subparts seek information so disparate as to be linked together only by their association to this litigation.

### C. Motion to Bar Claims/Second Motion to Compel and Remaining Issues in First Motion to Compel

In the remainder of its first motion to compel, Local 150 raises a myriad of other complaints, some of which have been withdrawn, some of which are under discussion, and some of which appear to be the subject of discovery not yet due from the

8

plaintiffs at the time Local 150 filed its motion. The Motion To Bar Claims/Second Motion to Compel fares no better. In this motion, Local 150 seeks to compel new or different answers to at least 25 requests for production, each on a different ground. Local 150 also raises a number of other objections to the plaintiffs' discovery responses. Then, in its reply brief, Local 150 avers that "if" the plaintiffs take various actions, "then" Local 150 will withdraw certain requests.

It is not this court's responsibility to become a third party to discovery disputes between the litigants. More plainly, this court will not micro-mediate disputes on each and every interrogatory or request for production propounded by the defendant. Local Rule 37.1 and the Rules of Professional Conduct direct that counsel are to diligently and in good faith attempt to resolve their discovery disputes prior to seeking court intervention on the <u>few</u> remaining issues, if any.

The parties shall conduct a meaningful in-person Local Rule 37.1 conference within 10 days of this Opinion and issue either a joint stipulation to withdraw the Motion to Bar Claims or a joint report enumerating the remaining issues before this court 10 days thereafter.  The parties are **WARNED** that sanctions will result if they are unable to resolve their dispute.

_____

For the foregoing reasons, the Motion to Compel Discovery filed by the defendant, International Union of Operating Engineers ("Local 150"), in these consolidated cases on March 30,

2006, is **GRANTED IN PART** and **DENIED IN PART,** and the Motion to Bar Claims and Evidence and Compel Responses to Second and Third Document Requests filed by Local 150 on May 15, 2006 is **TAKEN UNDER ADVISEMENT**.

ENTERED this 22nd day of June, 2006

s/ ANDREW P. RODOVICH
United States Magistrate Judge