**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

```
LEVY INDIANA SLAG COMPANY,          )
Plaintiff,                          )
                                    )
vs.                                 )   NO. 2:05-CV-344
                                    )
INTERNATIONAL UNION OF OPERATING    )
ENGINEERS, LOCAL 150, AFL-CIO       )
                                    )
Defendant.                          )
***********************************
                                    )
EDW. C. LEVY COMPANY, INC.          )
                                    )
Plaintiff,                          )
                                    )
v.                                  )   NO. 2:05-CV-349
                                    )
INTERNATIONAL UNION OF OPERATING    )
ENGINEERS, LOCAL 150, AFL-CIO       )
                                    )
Defendant.                          )
```

## OPINION AND ORDER

This matter is before the Court on: (1) Motion for Partial
Summary Judgment, filed by Plaintiffs, Levy Indiana Slag Company
and Edw. C. Levy Company, Inc., on May 8, 2006 (DE# 46); (2)
Plaintiffs' Request for Oral Argument, filed on May 8, 2006 (DE#
47); (3) Motion for Summary Judgment filed by Defendant
International Union of Operating Engineers, Local 150, AFL-CIO, on
August 11, 2006 (DE# 81); (4) Plaintiffs' Motion to Strike

1

Affidavits of Larry Sparks, John Sorenson and David Fagan and Materials Purporting to Rely on those Affidavits, filed by Plaintiffs on August 28, 2006 (DE# 85); and (5) Local 150's Motion to Supplement Summary Judgment Exhibits, filed on September 12, 2006 (DE# 88).  For the reasons set forth below: (1) Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**; (2) Plaintiffs' Request for Oral Argument is **DENIED**; (3) Defendant's Motion for Summary Judgment is **DENIED**; (4) Plaintiff's Motion to Strike is **DENIED**; and (5) Defendant's Motion to Supplement is **GRANTED.**

Accordingly, summary judgment is entered in favor of Plaintiffs and against Defendant on the issue of liability.  As a result, this leaves only the question of Plaintiffs' damages for trial.

BACKGROUND

On September 7, 2005, Plaintiff, Levy Indiana Slag Company ("LISCO"), brought suit against Defendant, International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150") pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. section 185, as amended, ("LMRA"), in case no. 2:05-CV-344. Primarily, LISCO complains that its workers represented by Local 150 engaged in unlawful strike activity at its facility in violation of the collective bargaining agreement.  Two days later, Plaintiff, Edw. C. Levy Company, Inc. ("ECL"), brought suit against

Local 150, also pursuant to section 301 of the LMRA, in case no. 2:05-CV-349.   Like LISCO, ECL also complains that its workers represented by Local 150 engaged in unlawful strike activity at its facility in violation of their collective bargaining agreement. These cases have now been consolidated.

The parties have filed cross-motions for summary judgment on the issue of whether Local 150 members contractually waived their right to engage in the complained of strike activity.


DISCUSSION

Motions for Summary Judgment

The standards that generally govern summary judgment motions are familiar.   Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).   In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De*

*Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an

4

essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts

Plaintiff LISCO is a Michigan corporation with its principle place of business in Gary, Indiana. (Cmplt ¶ 4 in Case No. 2:05-CV-344). LISCO employs approximately 40 hourly production and maintenance employees at its slag and steel mill services facility at the Gary Works Facility. (Cmplt ¶ 4 in Case No. 2:05-CV-344). Plaintiff ECL is an Indiana corporation with its principle place of business in East Chicago, Indiana. (Cmplt ¶ 4 in Case No. 2:05-CV-349). ECL employs approximately 33 hourly production and maintenance employees at its slag and steel mill services facility at the Indiana Harbor Facility. (Cmplt ¶ 4 in Case No. 2:05-CV-349). Both Plaintiffs provide slag removal, metal reclamation and transportation to the two aforementioned steel mills as well as manufacture slag aggregate for sale in the construction materials industry.

Edward C. Levy, Jr., is the principal owner of Edw. C. Levy Co., which has approximately 70 subsidiary companies, including ECL and LISCO. (Def. Ex. CC at p. 7). Evan Weiner is the President of ECL and LISCO. (Def. Ex. CC at pp. 10-11). Mr. Levy owns the ECL in its entirety. (Def. Ex. CC at pp. 8, 25). Mr. Levy and Mr. Weiner own 85 and 15 percent of LISCO, respectively. (Def. Ex. CC

5

at p. 25).

Local 150 is a labor union that represents workers employed in the slag processing and aggregate production industries, including those at LISCO and ECL. (Def. Ex. BB at pp. 11-13). William Dugan is the President-Business Manager of Local 150. (Def. Ex. DD at p. 8). David Fagan is Local 150's Financial Secretary who is also in charge of the general oversight of the business agents, organizers, and others employed by Local 150. (Def. Ex. DD at p. 7).

LISCO and ECL each have separate collective bargaining agreements with Local 150 covering the hourly production and maintenance employees at their respective facilities. (See Pl's Exs. 2 and 3). LISCO's current collective bargaining agreement with Local 150 is effective January 25, 2003 through January 24, 2007 ("LISCO Agreement"). (Pl's Ex. 2). ECL's current collective bargaining agreement with Local 150 extends from October 1, 2001 to September 30, 2006 ("ECL Agreement"). (Pl's Ex. 3). Section 12 of both the ECL and LISCO Agreements contain identical no-strike clauses, which provide:

> NO STRIKES, NO LOCKOUTS - There shall be no strikes, work stoppages, slowdowns, interruption or impeding of work during the period of this Agreement. There shall be no lockouts during the period of this Agreement.

(Pl's Ex. 2 at § 12; Ex. 3 at § 12).

The "NO STRIKES, NO LOCKOUTS" clauses have been in each of LISCO and ECL's collective bargaining agreements with Local 150 -

without modification - since LISCO and ECL negotiated their initial
contracts with Local 150 in 1997 and 1983, respectively.  (Pl. Ex.
4, p 48; Pl. Ex. 5, pp. 42-44; Pl. Ex. 6, pp. 30-31).

Mr. Levy also owns The Levy Company ("TLC"), which provides
slag and steel mill services at Mittal Steel's Burns Harbor,
Indiana facility ("Burns Harbor Facility").  (Pl. Ex. 7, pp. 65-
66).  TLC employees are represented by Local 150 for collective
bargaining purposes.  The most recent collective bargaining
agreement between TLC and Local 150 expired on March 31, 2005 ("TLC
Agreement"); nevertheless, Local 150 members continued to work at
the Burns Harbor Facility after the TLC Agreement's expiration.
(Pl. Ex. 5, pp. 24-25).  But, in the spring of 2005, Local 150
member employees of TLC voted to authorize an unfair practice
strike against TLC.  (Def. Ex. DD at p. 34).

Local 150 sent a letter to certain TLC customers, encouraging
employees of TLC customers to honor Local 150's picket and to
engage in sympathy activity.  (Pl's Ex. 4, pp. 65-67).  In response
to this letter, senior management for LISCO and ECL met with Local
150 stewards to remind them that LISCO and ECL employees are
covered by broad no-strike clauses in the applicable collective
bargaining agreements and that employees would be subject to
discipline if they engaged in sympathy strike activity in support
of a strike at TLC's Burns Harbor Facility.  (Pl's Ex. 8, pp. 21-
23).  Thereafter, Local 150 filed an unfair labor practice charge

with the National Labor Relations Board ("NLRB") alleging that LISCO's and ECL's threats of discipline for engaging in sympathy strike activity violated Section 8(a)(1) of the National Labor Relations Act ("NLRA"). (Pl's Ex. 9, pp. 84-85, Ex. 9).

On August 13, 2005, Local 150 went on strike against TLC at the Burns Harbor Facility for unfair labor practices. (Def. Ex. DD, p. 28). On August 23, 2005, Local 150 established a picket at LISCO's Gary Works Facility. (Def. Ex. DD, p. 37; Def. Ex. EEE, p. 83). Local 150 claims the picket was erected at the LISCO facility against TLC and LISCO as a single employer for unfair labor practices. (Def. Ex. DD, p. 37; Def. Ex. EEE, p. 83).

On August 30, 2005, the NLRB dismissed Local 150's unfair labor practice charge regarding the alleged threat of discipline against LISCO and ECL employees if they engaged in sympathy strike activity. (Pl's Ex. 9, pp. 85-87, Ex. 10 attached thereto). The NLRB found that "[t]he evidence was insufficient to establish a violation in view of the broad no strike clause in the relevant collective bargaining agreements and the absence of extrinsic evidence that 'sympathy strikes' were not also covered by such clause." (Pl's Ex. 9, Ex. 10 attached thereto).

On September 8, 2005, Local 150 erected a picket at ECL at the Indiana Harbor Facility. (Def. Ex. DD, p 40). Local 150 asserts the picket at ECL is against TLC and ECL as a single employer for unfair labor practices. (Def. Ex. DD, p 40). Local 150 maintains

8

that it is not on strike against either LISCO or ECL.   (Def.  Ex. DD, pp. 51, 53; Def. Ex. PP; Def. Ex. V; Def. Ex. W).

In response to Local 150's picketing at LISCO, LISCO employees represented by Local 150 walked off the job and refused to return to work.   (Pl's Ex. 5, pp. 24-26; Pl's Ex. 12, pp. 45-47). Similarly, in response to Local 150's picketing at ECL, the ECL employees represented by Local 150 walked off of the job.   (Pl. Ex. 5, pp. 34-36).   Thereafter, all but two ECL employees refused to return to work.   (Pl. Ex. 5, pp. 36-38).

On September 10, 2005, LISCO sent a letter to each striking employee advising that those who refused to return to work would be subject  to  discipline,  up  to  and  including  discharge  from employment for violating Section 12 of the LISCO Agreement.   (Pl's Ex. 7, pp. 45-46, Ex. 16 attached thereto).   Local 150 filed another unfair labor practice charge with the NLRB over the threat of  discipline.    Nevertheless,  on  September  15,  2005,  LISCO discharged its Local 150 represented employees who refused to work in violation of the no-strike clause in Section 12 of the LISCO Agreement.   (Pl's Ex. 4, pp. 38-39).   On September 19, 2005, Local 150 filed another unfair labor practice charge with the NLRB, this time alleging that LISCO violated Section 8(a)(3) of the NLRA by discharging "all of its bargaining unit employees for engaging in [the] protected concerted activity" of refusing to work behind Local 150's picket at the Gary Works facility.   (Pl's Ex. 4, p. 39,

9

Ex. 4 attached thereto).

ECL sent a letter to each striking employee offering to refrain from discharging them for engaging in prohibited sympathy strike activity if those employees returned to work. (Pl's Ex. 9, pp. 55-57, Ex. 6 attached thereto).   None of these employees returned to work and ECL discharged all of its bargaining unit employees who continued to strike in violation of  Section 12 of the ECL Agreement. (Pl's Ex. 4, p. 42).  Local 150 filed another unfair labor practice charge with the NLRB in response to ECL's firing of the bargaining unit employees.

On separate occasions, both LISCO and ECL offered Local 150 to reinstate the discharged employees if Local 150 ceased its picket activity at the Gary Works and Indiana Harbor Facilties; these offers were rejected.  (Pl's Ex. 4, pp. 42, 61-62, Exs. 6, 17 and 19 attached thereto).

Ultimately, the NLRB dismissed all of Local 150's unfair practice charges related to the mass discharge of LISCO and ECL employees.  The NLRB found that the evidence presented by Local 150 "was insufficient to establish that the broad no-strike provision in the current collective bargaining agreement[s] between the parties privileged a sympathy strike." (Pl's Ex. 4, pp. 40, 42-43, Exs. 17 and 18 attached thereto).   Local 150 appealed this decision; however, the Office of Appeals denied the appeal. (Pl's Ex. 19).

Sympathy Strike Is Precluded By LISCO and ECL Agreements

There are two pickets at issue here, both of which arose due to Local 150's belief that TLC engaged in unfair labor practices. The first took place at the LISCO facility in Gary, Indiana, where Local 150 erected a picket against TLC and LISCO, as a single employer.  The second took place at the ECL facility, where Local 150 erected a picket against against TLC and ECL, as a single employer.  As a result of these pickets, the Local 150 members who worked at both the LISCO and ECL facilities, recognized the strikes and refused to cross those picket lines.  Such an action by these LISCO and ECL employees is commonly known as "a sympathy strike." See *Gary Hobart Water Corp. v. NLRB*, 511 F.2d 284, 287 (7th Cir. 1975)(noting that a sympathy strike is essentially the refusal of union members to cross a picket line when they themselves are not the subject of the dispute).  The parties dispute the legality of these sympathy strikes.

It is unquestioned that Section 7 of the NLRA "protects employees who engage in a sympathy strike in support of a lawful, primary strike by another union." *W-I Canteen Service, Inc. v. NLRB*, 606 F.2d 738, 743 (7th Cir. 1979).  Nevertheless, "[e]mployees may waive this right in the collective bargaining agreement." *Id.*  Courts will enforce a contractual waiver of this right if it is "clear and unmistakable." *Id.*  At issue here is

11

whether Local 150 employees at LISCO and ECL waived their right to engage in sympathy strike activity.

Plaintiffs maintain that Local 150 members clearly and unmistakably waived their right to engage in sympathy strike activity pursuant to Section 12 of the LISCO and ECL Agreements. This waiver, Plaintiffs argue, can be found in the plain, express language of the broad no-strike clauses in the LISCO and ECL Agreements. Not surprisingly, Local 150 claims that Section 12 cannot be read to preclude their members' rights to engage in sympathy strike activity. Based upon reading each Agreement as a whole, the Court finds that Section 12 does, in fact, waive Local 150's right to engage in sympathy strike activity.

A logical starting point in a dispute over contract interpretation, such as this, is the language of the contract itself. The no-strike clause is not limited in any way by its own language. It expressly states, "[t]here shall be no strikes, work stoppages, slowdown, interruption or impeding of work during the period of this Agreement." (Pls' Exs. 2 & 3, section 12). It is hard to fathom the language to be any clearer or broader. Despite this, Local 150 posits that the words "sympathy strike" must be included in Section 12 to effectively waive its members' right to engage in sympathy strike activity. This Court disagrees. Local 150 has failed to cite to any legal authority that stands for the proposition that the words "sympathy strikes" need to be present in

a no-strike clause to effectively waive a union's right to engage in such activity.   Moreover, the inclusion of such words would serve only to limit Section 12's applicability in other ways.   See *R.L. Coolsaet*, 177 F.3d at 658 (citing *Plumbers and Steamfitters Local 150 v. Vertex Const. Co.*, 932 F.2d 1443, 1449 (11th Cir. 1991)("The doctrine of expressio unius est exclusio alterius instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded.")).

In addition, Section 12 is not limited by other contractual language– to arbitrable disputes only.   In some cases, courts find that sympathy strikes involve disputes outside the scope of the broad no-strike clauses. See e.g., W-I Canteen, 606 F.2d at 744(noting that "[s]ympathy strikes normally involve disputes outside the scope of the employees' contract with their employer.").   As such, in those cases, courts hold that broad no-strike clauses do not waive a union member's right to engage in sympathy strike activity.   However, those are instances when the doctrine of coterminous application is invoked.   Under this doctrine, courts imply that a broad no-strike clause prohibits only those strikes which are over disputes covered by a contractual arbitration procedure. *United States Steel*, 711 F.2d at 776(noting that the theoretical basis for coterminous application is that a no-strike clause is considered the quid pro quo of an arbitration

clause).   Here,  though,  as  both  the  LISCO  and  ECL  Agreements
contain  an  express  no-strike  clause,  the  question  of  whether  an
obligation  not  to  strike  may  be  implied  from  the  arbitration  clause
is  not  an  issue.   *Id.*

"In  cases  where  an  arbitration  clause  and  an  express  no-strike
clause  are  closely  interwoven,  it  may  be  reasonable  to  infer  that
the  parties  intended  the  two  provisions  to  have  the  same  scope."
*Id.*  This  was  the  case  in  *Gary  Hobart  Water*,  where  there  was  a
single  provision  that  both  required  certain  grievances  and
prohibited  strikes.   511  F.2d  284.   There,  the  court  of  appeals
held  that  the  express  no-strike  clause  extended  only  as  far  as  the
duty  to  arbitrate.   Unlike  the  provision  in  *Gary  Water  Hobart*,
however,  the  no-strike  clause  at  issue  here  is  functionally
independent  from  the  arbitration  clause.   The  arbitration  clause  is
found  in  Section  9  of  the  Agreements.   Section  9.01  of  the
Grievance  and  Arbitration  Procedure  in  the  both  LISCO  and  ECL
Agreements,  provides:

> Should  differences  arise  between  the
> Company  and  the  Union  or  between  the  Company
> and  any  of  its  employees  as  to  the
> interpretation  and  application  of  the
> provisions  of  this  Agreement,  there  shall  be
> no  suspension  of  work  on  account  Of  [sic]  such
> differences  and  an  earnest  effort  shall  be
> made  to  settle  such  differences  through  the
> grievance  procedure  hereafter  specified.

The  arbitration  clause  and  the  no-strike  clause  appear  in
separate  sections  of  the  Agreements.   See  *United  States  Steel*,  711

14

F.2d at 778(noting that clauses appearing in separate sections is a factor to their independence).   Section 9, containing the arbitration clause, is entitled "Grievance and Arbitration Procedure" and Section 12 is entitled "No Strikes, No Lockouts." In addition, these two clauses differ in scope.  The plain language of Section 9.01 shows an agreement not to suspend work over arbitrable issues.  Section 12, in contrast, is not confined to strikes over arbitrable grievances; it expressly prohibits all strikes, work slowdowns and stoppages.

This Court finds Judge Rosenn's[1] observation in *United States Steel* to be appropriate here.  "Surely, if the Union was willing to waive the right to strike over disputes concerning wages, hours, and working conditions directly affecting its members, absent any language to the contrary, any argument that it did not intend to waive the right to strike over a dispute that did not directly concern them is paradoxical."  *Id.* at 779.  Ultimately, this Court is satisfied that the language of Section 12, taken in light of viewing each entire Agreement as a whole, constitutes a clear and unmistakable wavier of Local 150's right to engage in sympathy strikes.

Nevertheless, by relying heavily on *Mastro Plastics Corp. v. NLRB*, 350 U.S. (1956), Local 150 contends that the language of

---

[1]The Honorable Max Rosenn, Senior United States Circuit Judge for the Third Circuit, was sitting by designation.

15

Section 12 alone can not waive the employees' right to engage in sympathy strikes.  (Pl's Mem. P. 14).  In *Mastro Plastics*, the Supreme Court held that a similar broad no-strike clause[2] was insufficient to waive employees' right to strike against flagrant unfair practices.  There, the employees struck to protest a campaign of intimidation by their employer designed to oust their incumbent representative.  The Court found the employer's actions to be conduct "destructive of the foundation on which collective bargaining must rest."  *Id.* at 282.  In that situation, the Court noted that there was "no adequate basis for implying" that the Union waived such fundamental rights without a more compelling expression than found in the no-strike clause.  *Id.*  This is because, "[i]t seems highly unlikely, to say the least, that a union would agree to give up its members' right to strike against such conduct - in effect, to forfeit its means of self-preservation . . .."  *Local Union 1395 v. NLRB*, 797 F.2d 1027, 1033 (D.C. Cir. 1986)(commenting on *Mastro Plastics*).  Obviously, the nature of the right at issue in *Mastro Plastics* - the right to strike against unfair labor practices for self-preservation - is far different than that presented here - the right to engage in sympathy strikes.

---

[2]   "The Union agrees that during the term of this agreement, there shall be no interference with any kind with the operations of the employers, or any interruptions or slackening of production of work by any of its members.   The Union further agrees to refrain from engaging in any strike or work stoppage during the term of this agreement."  *Mastro Plastics*, 350 U.S. at 281.

See e.g. *Id.* at 1033-34 (D.C. Cir. 1986)(noting that "the explicitness with which a waiver must be stated in a contract varies with the nature of the right at issue."). While *Mastro Plastics* dealt with a much different right than presented here, the Supreme Court has had occasion to determine whether a broad no-strike clause can waive sympathy strikes. In *NLRB v. Rockaway News Supply Co.*, the Supreme Court, resting primarily on the language of the no-strike clause itself, held a sympathy strike to be within the purview of a general no-strike clause. 345 U.S. 71 (1953); see also *Local Union 1395*, 797 F.2d at 1033-34. Thus, this Court does not read the holding in *Mastro Plastics* to be applicable, much less controlling, in this situation.

In addition, Local 150 also claims that, for Section 12 to waive its members' right to engage in sympathy strike activity, Plaintiffs are required to present extrinsic evidence showing a mutual intent to include sympathy strikes within Section 12. This argument is premised on the Seventh Circuit's opinion in *Indianapolis Power & Light Co. v. NLRB*, 898 F.2d 524 (7th Cir. 1990). In *Indianapolis Power*, the Seventh Circuit did apply the rule that "[a] broad no-strike provision by itself is not sufficient to waive the right to engage in sympathy strikes if extrinsic evidence of the parties' intent does not demonstrate that the parties mutually agreed to include such rights" within the no-strike clause. *Id.* at 528. Local 150 urges this Court to enforce

17

this rule in the current context.  However, it must be pointed out that *Indianapolis Power* arrived in this circuit "in a somewhat unusual posture." *Id.* at 526.  After the NLRB's initial decision, the District of Columbia Circuit denied enforcement of the NLRB's order and remanded the case back to the NLRB.  The NLRB then issued a supplemental decision in favor of the union, which prompted the appeal to the Seventh Circuit and gave rise to the published opinion.  Due to this unique procedural posture, the Seventh Circuit applied the aforementioned rule regarding extrinsic evidence, which the District of Columbia Circuit announced in prior proceedings, as the law of the case.  *Id.* at 529.  While this Circuit has not expressly denounced the rule in *Indianapolis Power*, it has recognized that the rule is not necessarily the law of the circuit.  *R.L. Coolsaet*, 177 F.3d at 658, n.6.  This is not surprising as the rule does run contrary to this circuit's precedent.  See *Gary Hobart Water*, 511 F.2d at 287 (noting that collective bargaining agreement can relinquish right to engage in sympathy strike if waiver is in "clear and unmistakable language"); See also *W-I Canteen*, 606 F.2d at 746 (noting that the court was satisfied that the language of the no-strike clause was sufficiently clear to preclude sympathy strikes); see also *United States Steel*, 711 F.2d at 780 (holding that a broad no-strike clause can constitute a clear and unmistakable waiver of an employee's right to engage in a sympathy strike).  Thus, to apply

18

the NLRB's construction of broad no strike clauses set out in *Indianapolis Power*- a construction which has not been adopted in this circuit - would be inappropriate.

The Court is satisfied that the no-strike clauses in the LISCO and ECL Agreements clearly and unmistakably preclude sympathy strike activity at both LISCO's and ECL's facilities.  As such, there is no reason to discuss or consider the few pieces of extrinsic evidence that Local 150 has offered.[3]  Judge Manion's concurrence in *Indianapolis Power* is compelling, where he restated the law of the circuit that, under *United States Steel*, a broad no-strike agreement waives the right to engage in sympathy strikes. He noted that "[i]n most circumstances, extrinsic evidence should not override what is the collective bargaining agreement's clear meaning - 'the literal, all-encompassing language of the parties' own agreement.'"  *Indianapolis Power*, 898 F.2d at 532.  This Court agrees.

Agreements Do Not Require LISCO or ECL to Arbitrate

Local 150 also claims that it is entitled to summary judgment because LISCO and ECL failed to exhaust their remedies under the respective Agreements.  Specifically, Local 150 claims that LISCO

---

[3]Nevertheless, after due consideration of the proposed extrinsic evidence, this Court does not find that the parties mutually agreed to modify the language of the Agreements and exclude sympathy strikes from Section 12.

and ECL were required to go through the grievance procedure outlined in Section 9 of the Agreements before filing suit in federal court, which they did not do.  The problem with Local 150's argument is twofold.  First, as set forth above, the sympathy strike at issue is not an arbitrable matter.  Therefore, it is outside the arbitration clause.  Second, even if Local 150's sympathy strike activity was within the confines of the arbitration clause, it is clear that the grievance and arbitration procedure is a means for either Local 150 or a Local 150 member to file a grievance against LISCO or ECL.  (See Pl. Exs. 2 and 3; Section 9.02)(noting that "[a]ll written grievances shall bear the signature of the aggrieved employee listing specific nature of the grievance and the alleged violation of the contract.").  There is nothing to indicate that the arbitration clause is a means for LISCO or ECL to air disputes with Local 150 or its members.  For these reasons, neither LISCO nor ECL were required to submit its grievance with Local 150 to arbitration before filing this action.

Therefore, Plaintiffs' motion for partial summary judgment is **GRANTED** and Defendant's motion for summary Judgment is **DENIED**.


Motion To Strike

In this motion, Plaintiffs request this Court strike the affidavits of Larry Sparks, John Sorenson and David Fagan, including the materials purporting to rely upon those affidavits.

20

Upon due consideration, this motion is **DENIED.**


Motion to Supplement

Here, Local 150 has requested to supplement its summary judgment exhibits with documents it inexplicably did not include in its summary judgment briefing.  Notably, this motion and request to supplement the record has come after Plaintiffs filed their response to Defendant's motion for summary judgment (DE # 86) and reply to their own motion for summary judgment (DE# 84). Nevertheless, Plaintiffs do not claim to suffer any prejudice as a result of the inclusion of these materials.   Upon due consideration, this motion is **GRANTED.**


Plaintiffs' Request for Oral Argument

Because this Court found no genuine issue of material fact, there is no need for an oral argument in this case.  Moreover, the request fails to specifically set forth the purpose of the request. See N.D. Ind. L.R. 7.5.  For both of these reasons, the request is **DENIED.**


CONCLUSION

For the reasons set forth above: (1) Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**; (2) Plaintiffs' Request for Oral Argument is **DENIED**; (3) Defendant's Motion for Summary

Judgment is **DENIED;** (4) Plaintiff's Motion to Strike is **DENIED;** and (5) Defendant's Motion to Supplement is **GRANTED.**

Accordingly, summary judgment is entered in favor of Plaintiffs and against Defendant on the issue of liability. As a result, this leaves only the question of Plaintiffs' damages for trial.

DATED:   **February 26, 2007**                **/s/RUDY LOZANO, Judge**
                                               **United States District Court**